Filed 3/6/25

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re J.F., a Person Coming Under the Juvenile Court Law. | B332110 (Los Angeles County Super. Ct. No. 21CCJP02343) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> D.F., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of the County of Los Angeles, Gabriela H. Shapiro, Judge. Conditionally affirmed, in part, conditionally reversed, in part, and remanded with instructions.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant Father.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

Kristin L. Hallack and Heather Starman for the Minor.

———————————————

D.F. (father) appeals from the juvenile court's orders appointing a guardian for his son J.F. (the child) and terminating jurisdiction pursuant to Welfare and Institutions Code section 366.26.[1] He contends the court and the Los Angeles County Department of Children and Family Services (the Department) failed to satisfy their duty of initial inquiry under the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related California statutes (Cal-ICWA; § 224, et seq.).

In his opening brief, father sought conditional reversal of the juvenile court's guardianship order and remand to ensure compliance with the initial inquiry requirements of ICWA and Cal-ICWA.

No interested party filed a respondent's brief; instead, father, counsel for the child, and the Department filed a joint application and stipulation[2] for "*conditional affirmance of the*

———————————————

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]     Father's opening brief and the parties' stipulation were filed before our Supreme Court issued its decision in *In re Dezi C.* (2024) 16 Cal.5th 1112 (*Dezi C.*).

2

*legal guardianship*, a limited reversal of the termination of jurisdiction, and remand to direct the juvenile court to order [the Department] to inquire of the maternal grandmother L[.]K., the maternal aunt T[.]T., and the paternal great[-]aunt M[.]G. as to whether the child is or may be an Indian child and to further inquire and effectuate notice if required pursuant to [ICWA and Cal-ICWA] . . . ."  (Italics added.)

Following the filing of the parties' stipulation, we requested that they submit letter briefs addressing "the effect, if any, of the Supreme Court's opinion in [*Dezi C., supra,*] 16 Cal.5th 1112 on the terms and conditions of the parties' stipulation."  The parties filed letter briefs, but now disagree on whether the juvenile court's order appointing a guardian should be conditionally reversed.

The Department contends the disposition proposed in the parties' stipulation—conditional affirmance of the guardianship order, with limited reversal of the order terminating jurisdiction to enable remand for ICWA and Cal-ICWA compliance—remains the appropriate resolution of the appeal, even after *Dezi C., supra*, 16 Cal.5th 1112.[3]  It construes *Dezi C.'s* mandate of conditional reversal when error results in an inadequate ICWA and Cal-ICWA inquiry as limited to orders terminating parental rights.  Because the order here appointed a guardian without terminating parental rights, the Department maintains that "reversal . . . would be premature and unnecessary," as father's parental rights "remain intact" and he continues to be a party to the proceeding.

---

[3]     Counsel for the child filed a letter brief agreeing with the Department's position that the order appointing a guardian should not be conditionally reversed.

Father disagrees, arguing that, pursuant to *Dezi C., supra*, 16 Cal.5th 1112, "this Court should *conditionally reverse* the juvenile court's . . . order appointing a legal guardian for . . . [the child], and remand the matter to the juvenile court with directions to achieve compliance with [ICWA]."

This case involves reversible error because the parties agree, and we concur, that there was noncompliance with the initial inquiry requirements of ICWA and Cal-ICWA. (*In re H.V.* (2022) 75 Cal.App.5th 433, 438; *In re Charles W.* (2021) 66 Cal.App.5th 483, 489.) That is, the Department failed to make an effort to contact maternal grandmother L.K. and maternal aunt T.T. to inquire whether the child was or might be an Indian child, even though the Department had contact information for those relatives. We disagree, however, with the parties' position that the Department should also be ordered to contact paternal great-aunt M.G. A great-aunt is not an "extended family member" for purposes of the mandatory initial inquiry requirements of ICWA. (25 U.S.C. § 1903(2) ["'extended family member' shall be as defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent"].)

The parties agree that (1) there is no reasonable possibility that the public interest will be adversely affected by the conditional reversal and remand; and (2) the parties' reasons for requesting reversal outweigh the erosion of public trust that may result from the nullification of a judgment. We agree and further conclude that the parties' reasons for requesting the reversal outweigh the risk that the availability of a stipulated reversal

4

will reduce the incentive for pretrial settlement.  (Code Civ. Proc., § 128, subd. (a)(8).)

As to whether a reversal of the guardianship order, in addition to a reversal of the order terminating jurisdiction, is mandated under *Dezi C., supra*, 16 Cal.5th 1112, we agree with the Department that it is not.  Under the terms of the guardianship order, father's parental rights have not been terminated and the guardianship remains within the juvenile court's jurisdiction, even after the termination of dependency jurisdiction.  (§ 366.26, subd. (c)(4)(A) ["If the court finds that adoption of the child or termination of parental rights is not in the best interest of the child . . . , the court shall order that the present caretakers or other appropriate persons shall become legal guardians of the child . . ."]; see *Dora V. v. Superior Court* (2024) 104 Cal.App.5th 987, 1003, fn. omitted ["The Legislature created a different statutory procedure for legal guardians appointed by the juvenile court.  Such guardianships established pursuant to sections 366.26 or 360 remain within the jurisdiction of the juvenile court even after dependency jurisdiction has been terminated"].)

## DISPOSITION

The order appointing a guardian for the child is conditionally affirmed, but the order terminating dependency jurisdiction is conditionally reversed. The matter is remanded to the juvenile court with instructions to order the Department to make reasonable efforts to interview maternal grandmother L.K. and maternal aunt T.T. about the possibility of the child's Indian ancestry and to report to the court on the results of those efforts. Nothing in this disposition precludes the court from ordering additional inquiry of others having an interest in the child, including paternal great-aunt M.G. Based on the information reported, if the court determines that no additional inquiry or notice to tribes is necessary, the order terminating dependency jurisdiction is to be reinstated. If additional inquiry or notice is warranted, the court shall make all necessary orders to ensure compliance with ICWA and Cal-ICWA.

KIM (D.), J.

I concur:

MOOR, J.

6

In re J.F.
B332110


BAKER, Acting P. J., Dissenting



By statutory command, this court is obligated to refuse to accept a stipulated reversal of a duly entered judgment unless there is a proper basis to find (1) there is no reasonable possibility that the interests of nonparties or the public will be adversely affected, and (2) the parties' reasons for stipulating to reversal outweigh the erosion of public trust that may result from nullification of the judgment.  (Code Civ. Proc., § 128, subd. (a)(8).)  The majority disregards that command by accepting the parties' stipulation to (conditionally) reverse the juvenile court's order terminating dependency jurisdiction for purported noncompliance with what our Supreme Court has dubbed Cal-ICWA (California statutes ostensibly enacted to implement the federal Indian Child Welfare Act (ICWA)).  (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1130.)

That itself is problematic, but the bigger problem may be the Los Angeles County Department of Children and Family Services' (the Department's) continued abandonment of its adversarial role in these cases.  Here and in other cases that have reached this court, the Department has represented to juvenile court judges that it has complied with Cal-ICWA only to turn around on appeal and *stipulate* to a reversal of juvenile court orders that are fully defensible under our Supreme Court's decision in *Dezi C., supra,* 16 Cal.5th 1112—in which four

justices of the Supreme Court agreed that Cal-ICWA enumerates "'*examples* of the categories of people a social services agency or court should inquire of'" rather than a statute with "'no endpoint.'" (*Id.* at 1168 (dis. opn. of Groban, J.); see also *id.* at 1153 (conc. opn. of Kruger, J.).) The Department's conciliatory posture in these appeals prevents the development of Cal-ICWA law that very much still needs developing, as evidenced by the fractured *Dezi C.* opinion itself. And that means that in this judicial district—short of a grant of review on our Supreme Court's own motion or a petition for review by minors' counsel with an unusually broad perspective—the Department can persist in its habit of confessing juvenile court error rather than filing a brief to defend juvenile court orders that are often made in reliance on the Department's own representations.

## I

## A

Dependency proceedings in this case began in May 2021. The Department filed a petition alleging minor J.F., who had been living with his father D.F. (Father), was at risk of harm from physical altercations between Father and others that took place in the presence of the child. The petition also alleged J.F. was at risk of harm from Q.T.'s (Mother's) history of substance abuse and mental and emotional problems. Attached to the petition was a declaration from the assigned social worker stating she had asked Father about J.F.'s "Indian status" and he gave her no reason to believe J.F. was an Indian child. The detention report the Department submitted for the filed dependency petition recounted Father's statement that he had no Indian

heritage and flatly stated, "The Indian Child Welfare Act does not apply."

At the initial detention hearing, Father was present (virtually) and the juvenile court made a "no ICWA" finding, which it believed was "very clear."[1]  Mother, who was last known to have a dependency case pending in Kern County, was not present at the hearing; counsel available for appointment had been unable to reach her, and Father did not have a contact number for her either.  The juvenile court ordered J.F. detained and suitably placed.

The Department submitted another report in advance of the jurisdiction hearing.  It again stated ICWA "does not apply" and referenced the juvenile court's earlier finding to that effect in May 2021.  Mother's whereabouts continued to be unknown.  The Department's jurisdiction report, however, revealed that the court in the Kern County dependency proceedings had found in 2017 that ICWA "did not apply" as to Mother.[2]

At the jurisdiction and disposition hearing, Father did not contest the dependency allegations against him.  (Mother again was not present despite the Department's efforts to locate her.)  The court assumed dependency jurisdiction over J.F., ordered a case plan for Father, and reiterated its earlier "no ICWA" finding.  J.F. continued in his previous placement.

---

[1]     The minute order issued in connection with the hearing states Father signed and filed an ICWA-020 form at the hearing, but the parties have not included the form in the appellate record.

[2]     A Kern County social services agency report completed in May 2017 stated Mother "is of African[-]American descent with no American Indian heritage."

3

In February 2023, the juvenile court terminated Father's reunification services and set a permanency planning hearing (with a recommendation for a plan of legal guardianship) for later that same year.

In advance of that permanency planning hearing, the Department made a number of additional Cal-ICWA-related inquiries. The Department located Mother, who was then in a Kern County pre-trial detention facility, and she denied having any Indian ancestry.[3] The Department reinterviewed Father and he again denied any Indian ancestry. The Department contacted J.F.'s paternal grandfather and he denied any Indian ancestry. The Department contacted J.F.'s maternal grandfather and he too denied any Indian ancestry. And the Department contacted the caretaker with whom J.F. had been placed (she is variously described in the record as a paternal great aunt or a non-related extended family member), and she denied any Indian ancestry as well.

At the August 2023 permanency planning hearing, the court asked counsel on the record about Cal-ICWA compliance. All counsel—including the Department's attorney—agreed with the court's reiterated finding that "this is not an ICWA case and the [ICWA] does not apply." The court then proceeded to terminate dependency jurisdiction and order legal guardianship for J.F. with his existing caregiver.

---

[3]   The Department also gave Mother notice of the upcoming permanency planning hearing. She did not appear at the hearing.

B

Father noticed an appeal from these orders. His opening brief, filed in May 2024, argued (notwithstanding his prior on-the-record representation) that the juvenile court and the Department did not comply with the inquiry obligations of Cal-ICWA. He specifically complained that the Department did not make Cal-ICWA inquiry of J.F.'s "paternal aunt, [M.]G.," and his "maternal grandmother, [L.]K."

The Department did not file a respondent's brief. Instead, two months after the filing of the opening brief, the Department stipulated with Father and minor's counsel to order a "limited reversal" of the order terminating jurisdiction and to conditionally affirm the guardianship order with directions to conduct additional Cal-ICWA inquiry. Remarkably, the Department stipulated to relief beyond that sought in the opening brief, i.e., for an order directing the Department to make Cal-ICWA inquiry of not just M.G. and L.K., but also "maternal aunt [T.]T."

Just over two weeks after the parties filed their stipulation, our Supreme Court decided *Dezi C.*, *supra*, 16 Cal.5th 1112. Although the court in that case conditionally reversed the order under review for undisputed Cal-ICWA inquiry error, the opinion for the court explains that "the juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Id.* at 1141.) The opinion for the court also cautions that Cal-ICWA "does not require reversal in all cases in which every possible extended family member has not been asked about the child's Indian ancestry." (*Id.* at 1140.) And, as I have already mentioned and

5

shall revisit in more detail, the concurring and dissenting justices in *Dezi C.*, which comprise a majority of the Supreme Court, are even more explicit about the deference that juvenile court Cal-ICWA findings should be given to mitigate difficulties with the Cal-ICWA scheme. (*Id.* at 1153 (conc. opn. of Kruger, J.), 1168 (dis. opn. of Groban, J.).)

Because *Dezi C.* significantly altered the governing law for appellate review of claims of Cal-ICWA error, we asked the parties to file supplemental briefs addressing the impact of that case on the terms and conditions of the parties' stipulation for limited reversal on Cal-ICWA grounds. What we received, from the Department especially, was underwhelming. The parties did not discuss whether a stipulated reversal continued to be appropriate in light of the aforementioned features of *Dezi C.*—particularly its identification of the appropriate deferential standard of review—and the dictates of Code of Civil Procedure, section 128, subdivision (a)(8). Instead, they addressed only the more arcane and rather inconsequential question of whether any aspect of the juvenile court's orders could be conditionally affirmed (as requested) rather than conditionally reversed. As I next explain, *Dezi C.* matters for much more than that.

## II

Though *Dezi C.* produced a number of opinions from the justices on our Supreme Court, the court was unanimous about one thing: juvenile court Cal-ICWA findings are subject to a deferential standard of review in this court. (*Dezi C.*, *supra*, 16 Cal.5th at 1141; *id.* at 1153 (conc. opn. of Kruger, J.) ["I write separately . . . to express my agreement with part II of the dissenting opinion on the threshold question of what constitutes

6

an adequate initial inquiry under Cal-ICWA"]; *id.* at 1166 (dis. opn. of Groban, J.) ["[A]s the majority explains, a juvenile court's finding that the child welfare department met its inquiry requirements under Cal-ICWA is entitled to substantial deference on appeal"].)  Applying that deferential standard in this case—particularly in view of our inability to accept a stipulated reversal that would adversely affect the interests of nonparties (including J.F.'s legal guardian, who has an interest in finality (see *In re Rashad H.* (2000) 78 Cal.App.4th 376, 380)) or erode public trust from nullification of a legally defensible judgment—the juvenile court's Cal-ICWA finding is eminently defensible and likely correct.

J.F. has not lived on an Indian reservation.  He has not been a ward of a tribal court.  He has no identification card indicating membership in an Indian tribe.  Both of his parents denied having any Indian ancestry (and the Kern County court previously found ICWA did not apply to Mother).  Grandparents on *both* the maternal and paternal sides of the family similarly denied any Indian ancestry.  And J.F.'s legal guardian (who may also be his paternal great aunt) denied having any Indian ancestry too.  In the aggregate, this depicts "an initial inquiry that is adequate to reach a reliable conclusion about the applicability of ICWA."  (*Dezi C.*, *supra*, 16 Cal.5th at 1153 (conc. opn. of Kruger, J.); see also *In re E.W.* (2023) 91 Cal.App.5th 314, 323.)  Indeed, viewed against the backdrop of what has already been done, there is no reason to think the additional inquiry the parties now want this court to order would add anything to the Cal-ICWA discretionary calculus.  The parties offer no reason to think M.G. (who is described in the opening brief as a paternal aunt but in the parties' stipulation as a paternal great aunt)

7

would have any Indian heritage insight that those contacted on the paternal side of the family (Father and the paternal grandfather) do not.  Similarly, the parties offer no reason to suspect questioning L.K. or T.T. would be meaningful when those contacted on the maternal side of the family (Mother and the maternal grandfather) have denied Indian ancestry.

The facts in this case illustrate precisely why a majority of those on our Supreme Court say courts should not "read [Cal-ICWA] as requiring that an initial . . . inquiry be made of every member of a child's extended family, including every first and second cousin, every single niece and nephew, all aunts and uncles, all siblings-in-law, plus every other person who has an interest in the child." (*Dezi C.*, *supra*, 16 Cal.5th at 1167 (dis. opn. of Groban, J.).)  Instead, Cal-ICWA is best read to enumerate "'*examples* of the categories of people a social services agency or court should inquire of'" and is best applied in a reviewing court to give juvenile courts some latitude to determine what is adequate under the circumstances.  (*Id.* at 1168 (dis. opn. of Groban, J.).)  The juvenile court in this case concluded—and counsel for the Department agreed on the record—that the Department undertook an appropriate inquiry and considered all of the statutorily enumerated potential sources of ICWA-related information to arrive at a reasonable conclusion of whether J.F. may be an Indian child.  The court's conclusion is an appropriate exercise of discretion supported by substantial evidence.  But the Department still folds in this appeal because it has not adjusted to the post-*Dezi C.* world; it is still stuck "follow[ing what I identified years ago as] a new unspoken rule: interrogate every person contacted in a child welfare investigation about ICWA issues and hope both the juvenile courts and reviewing courts will

agree that is enough." (*In re H.V.* (2022) 75 Cal.App.5th 433, 442 (dis. opn. of Baker, J.).)

That alone is unfortunate.  But the Department's eagerness to concede error in this case goes further and exceeds what even the majority can tolerate.  In agreeing to the stipulation for a limited reversal, the Department asked this court to direct the juvenile court (and, thus, the Department itself) to oversee Cal-ICWA related inquiry of M.G.  The majority, however, rejects that request because M.G. appears to be outside the definition of an extended family member.  The majority is right to so circumscribe its remand directions but, respectfully, it does not go far enough.  We should reject the parties' stipulation in its entirety, permit completion of merits briefing, and if everything in this appeal then looks the same as it does now, affirm the juvenile court's orders outright.  Department concessions, at least in this area of the law, don't mean what they used to.


BAKER, Acting P. J.

9